UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DEJA DASHANTE HARRISON                    CIVIL ACTION

VERSUS                                       NO. 21-2310

VICI PROPERTIES, INC. ET AL.            SECTION "R" (4)


**ORDER AND REASONS**


Before the Court is defendants Vici Properties, Inc. ("Vici") and
Caesars Entertainment, Inc.'s ("Caesars") motion to dismiss for failure to
state a claim under Federal Rule of Civil Procedure 12(b)(6).[1]  Plaintiff Deja
Dashante Harrison opposes the motion.[2]   For the following reasons, the
Court grants defendants' motion.  The Court also grants plaintiff leave to
amend her complaint to cure the deficiencies.


I.     **BACKGROUND**

This case arises from the denial of entry into a hotel casino.  On October
4, 2021, plaintiff Deja Dashante Harrison, her brother, and her friend
checked into Harrah's hotel in New Orleans.[3]  At 5:00 a.m. the next morning,

---

[1]     R. Doc. 9.
[2]     R. Doc. 17.
[3]     R. Doc. 1-2 ¶ 18.

the group visited the hotel's casino.[4]  Before entering the casino gaming area, a Harrah's host asked to see plaintiff's identification.[5]  After Harrison gave the host her Louisiana driver's license and the host attempted to run the license through the ID scanner, the host told plaintiff that her license "did not scan," and that he had to call his manager to "verify her identification."[6]  While waiting for the manager, plaintiff gave the host her vaccination card.[7]

When the manager, "Corey Doe," arrived, he attempted to rescan plaintiff's driver's license, but the license again did not scan properly.[8]  At this point, plaintiff gave Corey her military identification card.[9]  Plaintiff asserts that, when Corey looked at her military ID, he "rudely, and condescendingly" told plaintiff that her ID was "fake," that it was not her card, and that "there [was] no way [she] made E-6 that quick."[10]  "E-6" refers the rank listed on plaintiff's military ID.  Corey thus refused to accept her military ID as a valid form of identification for admission into the casino, and allegedly "refused to even attempt to scan the [military] ID."[11]  Plaintiff

---

[4]     *Id.* ¶ 19.
[5]     *Id.* ¶ 20.
[6]     *Id.* ¶ 21.
[7]     *Id.* ¶ 22.
[8]     *Id.* ¶ 23.
[9]     *Id.* ¶¶ 23-24.
[10]    *Id.* ¶ 24.
[11]    *Id.* ¶ 25.

represents that she then "politely informed" Corey that she had recently been commissioned to a higher rank of second lieutenant.[12]  In response, Corey allegedly continued to question the authenticity of plaintiff's ID.[13]

Plaintiff asserts that, despite her "continuing [efforts] to verify both her driver's license and military ID," Corey refused to allow her to enter the casino, and "rudely and dismissively announced he was calling NOPD (New Orleans Police Department)."[14]  Plaintiff states that, after Corey represented that he called the police, she again told him that both her driver's license and military ID were authentic, at which point Corey asserted that plaintiff was trespassing.[15]  Harrison asserts that she then "patiently waited" in the casino lobby for two hours for the police, but that they never came.[16]  During her wait, plaintiff showed the host and another security guard her army paystub and a picture of her in uniform, which she represents were shared with Corey.[17]  Plaintiff states that, during this two-hour wait, she experienced "extreme distress," and was "in fear for her life as she was aware of the many false arrest, excessive force[,] and police brutality incidents occurring

---

[12]   *Id.* ¶ 27.
[13]   *Id.* ¶ 28.
[14]   *Id.* ¶ 31.
[15]   *Id.* ¶¶ 32-33.
[16]   *Id.* ¶ 34.
[17]   *Id.* ¶¶ 35-36.

throughout the country against African Americans."[18]  After two hours, the host informed Harrison that he did not believe the police were coming, and Harrison told Corey that she was leaving and was going to file a police report. She asserts that Corey "aggressively replied, 'don't forget the case number.'"[19]

On November 15, 2021, plaintiff filed suit in Louisiana state court against Vici, the entity that owns Harrah's casino, and Caesars, the company that operates and manages the hotel and casino in New Orleans.[20]  Plaintiff also sued Corey Doe as the "security officer/manager at [Harrah']s" who she alleges "bears responsibility in his official capacity as security officer/manager for administering, monitoring, maintaining[,] and securing the gaming facility."[21]  In her petition for damages, plaintiff alleges that she was denied entry into Harrah's "due to her sex (gender), race, and military status," and was "falsely accused of acting fraudulently, and subjected to unjustified detainment, as well as emotional and psychological distress."[22] On December 16, 2021, defendants removed the case to federal court,

---

[18]     *Id.* ¶ 37.
[19]     *Id.* ¶¶ 39-40.
[20]     *Id.* ¶¶ 5-8.
[21]     *Id.*
[22]     *Id.* ¶ 4.

contending that the requirements of diversity jurisdiction under 28 U.S.C. § 1332 were met.[23]

Defendants now move to dismiss all of plaintiff's claims, asserting that she has failed to plead facts sufficient to withstand a motion to dismiss, and instead relies exclusively on conclusory allegations to support her claims.[24] Plaintiff opposes the motion, asserting that she has "clearly established facts in support of her causes of action," and requests that, if the Court grants any part of defendants' motion, she be given leave to amend her complaint.[25]  The Court considers the parties' arguments below.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  The Court must accept all well-pleaded facts as true and must draw all reasonable

---

[23]    R. Doc. 1.
[24]    R. Doc. 9 at 5.
[25]    R. Doc. 17 at 1-2.

inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).  But the Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments.  *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims.  *Id.*  "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'"  *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

## III.  DISCUSSION

### A.  Discrimination Claims

Harrison asserts that she experienced "racial and sex discrimination while attempting to enter Harrah's."[26]  Specifically, she alleges that she was denied access to Harrah's, a public accommodation, in violation of two

---

[26]     R. Doc. 1-2 ¶ 4.

Louisiana statutes.  The Court evaluates plaintiff's claims under each statute below.

### 1.   La. Rev. Stat. § 51:2247

First, Harrison brings a claim for discrimination under the Louisiana Human Rights Act ("LHRA").[27]  *See* La. Rev. Stat. § 51:2231, *et seq*.  The statute provides that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement, . . . on the grounds of . . . race [or] . . . sex."  La. Rev. Stat. § 51:2247.  "Place of public accommodation, resort, or amusement" is defined as "any place, store, or other establishment, either licensed or unlicensed, which supplies goods or services to the general public or which solicits or accepts the patronage or trade of the general public, or which is supported directly or indirectly by government funds."  La. Rev. Stat. § 51:2232(9).  The statute defines "[d]iscriminatory practice in connection with public accommodations" as "any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the

---

[27]   *Id.* ¶¶ 45-55.

treatment of a person or persons because of race . . . [or] sex." La. Rev. Stat. § 51:2232(5).

Harrison contends, and defendants do not dispute, that Harrah's casino is a "place[] of public accommodation, resort, or amusement," and is therefore forbidden from discriminating on the basis of sex or race.[28]  The Court finds that Harrah's, which includes a casino, hotel, and restaurant, all of which supply goods and service to the general public and accept patronage from the general public, qualifies as a public accommodation under the statute.

The parties dispute whether defendants engaged in a "discriminatory practice in connection with public accommodations" by denying plaintiff entry into the casino.  Because of the limited case law interpreting the LHRA's definition of "discriminatory practice," courts have looked to federal antidiscrimination statutes when interpreting the scope of the LHRA.  *See, e.g.*, *Cougle v. Berkshire Life Ins. Co. of Am.*, 429 F. Supp. 3d 208, 216 (E.D. La. 2019); *Smith v. Bd. of Comm. of La. Stadium & Exposition Dist.*, 385 F. Supp. 3d 491, 506-08 (E.D. La. 2019), *aff'd in part, vacated in part sub nom. Smith v. France*, 850 F. App'x 243, 248 (5th Cir. 2021) (per curiam) (noting that the "Louisiana Human Rights Act explicitly references federal

---

[28]     *Id.* ¶ 51.

antidiscrimination law in its statement [of purpose] . . . so it is reasonable to look to Title III for guidance"). Given that the Fifth Circuit has noted that La. Rev. Stat. § 51:2247 "is substantively similar to Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(a)," *Semien v. Pizza Hut of Am., Inc.*, 204 F.3d 1115, 1115 (5th Cir. 1999) (per curiam), the Court finds it appropriate to look to the Civil Rights Act for guidance. Relevant here, the Court looks to Title II and its caselaw as a reference for determining whether defendants' actions constituted a "discriminatory practice."

Similar to the LHRA, Title II of the Civil Rights Act of 1964 prohibits discrimination in public accommodations. *Fahim v. Marriot Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008). Title II claims may be proven by direct or circumstantial evidence. *Id.* at 349. Here, there are no direct allegations of race or sex discrimination. Plaintiff does not allege that Corey, or any other defendant, made any reference to plaintiff's race or gender.[29]

Absent direct evidence, plaintiff instead must allege that there is circumstantial evidence that would plausibly support a claim of discrimination. *See D'Aquin v. Starwood Hotels & Worldwide Props., Inc.*, No. 15-1963, 2015 WL 5254735, *2-3 (E.D. La. Sept. 8, 2015). The Court finds that plaintiff has failed to do so here. Plaintiff states that she was

---

[29]    R. Doc. 9-1 at 8; R. Doc. 1-2 ¶¶ 25, 31, 33, 40.

denied entry into Harrah's "despite ample evidence supporting her identification," because "based on her appearance alone, the manager did not believe Harrison could be a lieutenant in the military."[30]  Based on this encounter, Harrison concludes that Corey's "dismissive treatment towards her was based on the stereotyped, biased view that a black female, with a youthful appearance, could not be a ranked Officer in the military."[31]

After drawing all reasonable inferences in favor of the plaintiff, the Court does not find that the alleged actions by defendants plausibly suggest that defendants were motivated by plaintiff's gender or race.  Plaintiff has not alleged any non-conclusory facts that connect Corey's statements that her military ID was "fake" and that "there [was] no way [she] made E-6 that quick" to plaintiff's race or gender.  Instead, plaintiff's assertion that the "sole basis" for Corey's rejection of her military ID was her "appearance as a young black woman"[32] fails to rise beyond the level of speculation.  *See Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Additionally, Harrison's assertion that discrimination can be inferred from Corey's refusal to "even attempt" to scan

---

[30]    R. Doc. 17 at 6-7.
[31]    R. Doc. 1-2 ¶ 26.
[32]    R. Doc. 17 at 8.

her military ID[33] likewise fails to allege facts connecting his failure to scan the ID to her race or gender.  Further, plaintiff has not alleged that she was treated differently from other patrons of Harrah's who were not members of the protected classes of which plaintiff is a member.  *See Thymes v. AT&T Mobility Servs., LLC*, No. 19-90, 2019 WL 1768311, at *11 (W.D. La. Mar. 19, 2019), *report and recommendation adopted*, 2019 WL 1757864 (W.D. La. Apr. 18, 2019) ("The plaintiff did not allege that he was treated differently from guests at L'Auberge who were not members of a protected class; consequently, he did not show that L'Auberge discriminated against him on the basis of his race or his membership in any other protected class."); *Thomas v. Two Rivers Grocery & Mkt.*, No. 12-205, 2012 WL 5496423, at *2 (E.D. Tex. Oct. 18, 2012), *report and recommendation adopted*, 2012 WL 5494278 (E.D. Tex. Nov. 13, 2012) ("The complaint does not contain any facts that suggest that the services would be provided in a different manner to persons outside the protected class.").

The Fifth Circuit has approved the application of the *McDonnell Douglas* burden-shifting framework to Title II claims.  *Fahim*, 551 F.3d at 349 (collecting cases and approving of the Title VII burden-shifting framework to analyze Title II claims).  Under this framework, to set forth a

---

33      R. Doc. 1-2 ¶ 25.

*prima facie* case under Title II, a plaintiff must show that: (1) she is a member of a protected group; (2) she attempted to enjoy the benefits of the services of a public accommodation; (3) she was denied those services; and (4) she was treated less favorably than similarly situated persons outside of the protected class.[34]  *Id.* at 350.  Although the Fifth Circuit has applied this test in the summary-judgment context, it has not applied it at the motion-to-dismiss stage.  But district courts within the circuit have applied the test in the context of a motion to dismiss.  *See, e.g.*, *Martinez v. Sprouts Farmers Market, LLC*, No. 21-2096, 2021 WL 4034063, at *2 (S.D. Tex. Sept. 3, 2021) (granting defendant's motion to dismiss because plaintiff had failed to establish his *prima facie* case); *Thymes*, 2019 WL 1768311, at *11 (same).  *But see D'Aquin*, 2015 WL 5254735, at *2 (finding that "to hold plaintiffs at the 12(b)(6) stage to the same standard" that was "enunciated . . . in the summary judgment phase . . . would be inappropriate").  Here, the Court finds that if the *prima facie* test applies at the motion to dismiss stage,

---

[34]  Some courts have modified the fourth element of the *prima facie* test to ask whether "(a) the services were made available to similarly situated persons outside the plaintiff's protected class *or* (b) the plaintiff 'received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.'"  *Fahim*, 551 F.3d at 350 n.2 (quoting *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001)).  The Fifth Circuit has "not decide[d] whether the modified test is more appropriate for Title II cases."  *Id.*

plaintiff still fails to allege a plausible discrimination claim because she fails to assert that a similarly situated person outside of her protected class was treated differently.

In sum, the Court finds that plaintiff has not set forth any plausible allegations that defendants have engaged in a "discriminatory practice." Without more factual content, her allegations of discrimination are purely conclusory, and do not rise beyond the level of speculation necessary to survive a motion to dismiss. *See Twombly*, 550 U.S. at 545. Accordingly, under the LHRA and/or Title II jurisprudence, plaintiff's discrimination claims under Louisiana Revised Statute § 59:2247 must be dismissed.

### 2.    La. Rev. Stat. § 49:146

Plaintiff also alleges that defendants discriminated against her on the basis of her race and sex in violation of Louisiana Revised Statute § 49:146.[35] Louisiana Revised Statute § 49:146 states that:

 (1) In access to public areas, public accommodations, and public facilities, every person shall be free from discrimination based on race, religion, or national ancestry and from arbitrary, capricious, or unreasonable discrimination based on age, sex, or physical or mental disability.

(2) For purposes of this Section, a public facility is defined as any publicly or privately owned property in which the general public

---

[35]    R. Doc. 1-2 ¶¶ 56-63.

> has access as invitees and shall include such facilities open to the public as hotels, motels, restaurants, cafes, barrooms, and places or entertainment or recreation . . . .

La. Rev. Stat. § 49:146. "Access means the ability to enter . . . [to] pass to and from . . . to obtain or make use of." *Robertson v. Burger King, Inc.*, 848 F. Supp. 78, 81 (E.D. La. 1994) (quoting *Becnel v. City Stores Co.*, 675 F.2d 731, 734 (5th Cir. 1982) (citation omitted)). In determining whether a policy of access is in violation, a court must determine whether a "public area, accommodation or facility has a *policy* of discrimination that is arbitrary, capricious or unreasonable." *Albright v. S. Trace Country Club of Shreveport, Inc.*, 879 So. 2d 121, 133 (La. 2004) (emphasis added). The party alleging the violation of section 49:146 bears the burden of establishing by a preponderance of the evidence that there is a policy that is arbitrary, capricious, or unreasonable. *Id.*

Here, Harrah's meets the statutory definition of a "public accommodation" or "public facility." But plaintiff's complaint fails to allege any facts suggesting that Harrah's has a policy or regulation that discriminates against individuals on the basis of sex or race. Instead, plaintiff simply alleges that *she* was "denied access . . . based on her race as an African American and sex as a female."[36] Moreover, she seeks to hold

---

[36]     *Id.* ¶ 60.

defendants accountable under *respondeat superior* for the alleged discriminatory actions of Corey because he took those actions "as he was performing actions related to his employment at the time of the incident."[37] Notably, plaintiff does not allege that Corey took these actions in compliance with a company policy.  Because plaintiff has failed to plausibly allege that there was a policy of discrimination in place at Harrah's, her claims under Louisiana Revised Statute § 49:146 are dismissed.  *See Bascle v. Parrish*, No. 12-1926, 2013 WL 4434911, at *7 (E.D. La. Aug. 14, 2013) ("Because Plaintiffs fail to meet their burden of even showing that there is a policy in place, much less one that is arbitrary, capricious, or unreasonable, Plaintiffs claims under . . . Louisiana Revised Statute Section 49: 1[4]6 are dismissed.").  For these reasons, the Court thus grants defendants' motion to dismiss plaintiff's discrimination claims.

### B.    False Imprisonment

Plaintiff has also asserted a claim of false imprisonment against the defendants.[38]  The Louisiana tort of false imprisonment occurs "when one arrests and restrains another against his will and without statutory

---

[37]   *Id.* ¶ 62.
[38]   *Id.* ¶¶ 64-71.

authority." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 690 (La. 2006). There are two essential elements of a false imprisonment claim: "(1) detention of a person; and (2) the unlawfulness of such detention." *Id.* A "detention" requires the "total and unlawful restraint of a person's freedom of locomotion." *Rawls v. Daughters of Charity of St. Vincent De Paul, Inc.*, 491 F.2d 141, 146 (5th Cir. 1974) (citing *Crossett v. Campbell*, 48 So. 141 (La. 1909) ("Free egress must therefore be impossible.")). Thus, in order for a plaintiff to maintain a claim of false imprisonment, there must be "actual physical restraint" or "circumstances that would lead a reasonable person to believe he was not free to leave." *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, No. 11-2777, 2013 WL 3364348, at *2 (E.D. La. July 3, 2013).

Harrison alleges in her complaint that Corey denied her entry into Harrah's casino, and that after plaintiff's "continuing [efforts] to verify both her driver's license and military ID," he accused her of trespassing.[39] Harrison further alleges that after Corey announced he was calling the police, she "patiently waited [for] two hours inside the lobby" at Harrah's.[40] Despite plaintiff's assertion that she waited "patiently," she represents that she believed she could not leave the casino lobby until the NOPD arrived.[41] She

---

[39]     R. Doc. 1 ¶¶ 30-33.

[40]     *Id.* ¶ 34.

[41]     *Id.* ¶ 38.

thus asserts that she was "involuntarily confined" while she waited for the NOPD because she "feared physical restraint if [she] attempted to leave the casino because she believed Harrah's called the police, and believed the crime [that] she was accused of was serious and feared the repercussions she could face."[42]

Harrison has not plausibly alleged that she was detained. *See Vaughn v. Wal-Mart Stores, Inc.*, 734 So. 2d 156, 159 (La. App. 5 Cir. 1999) ("The element of detention is an essential component of the tort of false imprisonment."). Notably, Harrison does not allege that she was told that she could not leave the lobby, nor has she alleged that defendants attempted to physically detain her in the lobby. *See Taylor v. Johnson*, 796 So. 2d 11, 13 (La. App. 3 Cir. 2001) ("The record is void of any evidence that [defendants] detained [plaintiff], restricted her movement in the store, advised her she could not leave, or caused her to be arrested."). To the contrary, plaintiff alleges that Corey accused her of "trespassing" by remaining in the lobby—in other words, that he believed Harrison's presence on the property was without permission.

Moreover, plaintiff's "unfounded belief that [she] was restrained" while waiting for the NOPD cannot support her claim for false

---

[42]    R. Doc. 17 at 8.

imprisonment. *Kelly v. West Cash & Carry Building Materials Store*, 745 So. 2d 743, 750 (La. App. 4 Cir. 1999). Several Louisiana cases have held that a plaintiff's apprehension about a future arrest or prosecution is insufficient to establish false imprisonment. *See, e.g.*, *id.* (holding that plaintiff's fear of being prosecuted for theft did not establish a false imprisonment claim); *Harrison v. Phillips*, 539 So. 2d 911, 914 (La. App. 4 Cir. 1989) (rejecting plaintiff's contention that "the fact that the police were summoned" suggests plaintiff could not leave, noting that such a rationale "would lead to the somewhat questionable precedent that whenever a complaint is made to the police the accused could claim false imprisonment"). Thus, the Court finds that plaintiff has not alleged a plausible claim for false imprisonment, and thus grants defendants' motion to dismiss her false-imprisonment claim.

### C.    Intentional Infliction of Emotional Distress

Finally, plaintiff has asserted a claim for intentional infliction of emotional distress.[43]   To prevail on a claim for intentional infliction of emotional distress, plaintiff must prove "(1) that the conduct of [defendants] was extreme and outrageous; (2) that the emotional distress suffered by [plaintiff] was severe; and (3) that [defendants] desired to inflict severe

---

[43]    R. Doc. 1-2 ¶¶ 72-80.

emotional distress or knew that severe emotional distress would be certain or substantially certain to result from [its] conduct." *Roberson v. August*, 820 So. 2d 620, 629 (La. App. 4 Cir. 2002); *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). Conduct is considered "extreme and outrageous" when it is "so atrocious as to pass the boundaries of decency and to be utterly intolerable to civilized society." *Roberson*, 820 So. 2d at 620 (citing *Johnson v. English*, 779 So. 2d 876 (La. App. 2d Cir. 2000)). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not rise to the level of "extreme and outrageous conduct." *White* 585 So. 2d at 1209; *see also Singleton v. St. Charles Parish*, 833 So. 2d 486, 495 (La. App. 5 Cir. 2002) ("*White v. Monsanto* established a high threshold for evidence of intentional infliction of emotional distress.").

Nothing in Harrison's complaint indicates that defendants engaged in such extreme and outrageous conduct. Harrison alleges that Corey "rudely, and condescendingly" told her that her military ID was "fake," and subsequently "rudely and dismissively" announced that he was calling the NOPD.[44] But such conduct does not rise to the degree of "extreme and outrageous" that is required for an intentional-infliction-of-emotional-distress claim. At most, plaintiff's allegations establish that Corey was rude

---

[44]     *Id.* ¶¶ 25-26, 31.

to plaintiff and insulted her, but these assertions of "insults, indignities, . . . annoyances, and petty oppressions" are insufficient to establish a claim of intentional infliction of emotional distress.  *See White* 585 So. 2d at 1209. *Compare Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1026 (La. 2000) (citing *Bernard v. Doskocil Companies*, 861 F. Supp. 1006 (D. Kan. 1994) "(holding that a cumulative barrage of racial slurs and physical threats, including a threat to set the employee afire, may constitute extreme and outrageous conduct).").

Moreover, Harrison's complaint does not indicate that Corey intended to cause or knew he would cause plaintiff severe emotional distress. Accordingly, plaintiff's complaint has failed to state a valid claim for intentional infliction of emotional distress.  Defendants' motion to dismiss plaintiff's intentional-infliction-of-emotional-distress claim is granted.

### D.   Leave to Amend

Plaintiff requests that, in the event that the Court grants defendants' motion to dismiss, she be given leave to amend her complaint to allege facts

sufficient to support her claims.[45]  Defendants oppose this request on the grounds that any amendment would be futile.[46]

The Court should "freely give" leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013).  When deciding whether leave to amend should be given, the Court considers several factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Forman v. Davis*, 371 U.S. 178, 182 (1962).  The Court finds that none of these factors are present here.  Specifically, the Court finds that, with sufficiently pleaded facts, the "circumstances relied upon by . . . plaintiff may be a proper subject of relief."  *Id.*  The Court therefore dismisses Harrison's claims without prejudice and with leave to amend within twenty-one days of entry of this Order.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss, and dismisses plaintiff's complaint WITHOUT PREJUDICE.  The

---

45    R. Doc. 17 at 10
46    R. Doc. 20 at 8.

Court GRANTS plaintiff leave to file an amended complaint within twenty-one days of this Order.

New Orleans, Louisiana, this __10th__ day of May, 2022.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE